THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID NORINGTON, # B04938, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 3:23-cv-02410-GCS |
| | ) | |
| DAVID MITCHELL, | ) | |
| CHERYL CROW, | ) | |
| CHRISTINE BROWN, | ) | |
| ANGELA LANKFORD,[1] and | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

Plaintiff David Norington is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Danville Correctional Center. He brings this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq.*, while he was confined at Pinckneyville Correctional Center ("Pinckneyville"). He claims that Defendants failed to provide him with a functional hearing aid for nearly eight months and did not repair his broken Vibra Lite watch. Plaintiff seeks monetary damages.

Plaintiff's Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out

---

[1] Plaintiff spells this Defendant's surname as "Langford" in the caption and as "Lankford" throughout the rest of the Complaint. (Doc. 1, p. 1-2, 8, 10). The Court will use "Lankford" at this time.

non-meritorious claims.[2] *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff is hearing impaired, and all Defendants were aware of his condition and lack of accommodations because of his letters and emergency grievances. (Doc. 1, p. 10). Plaintiff has sued each individual Defendant in his or her official and individual capacities. (Doc. 1, p. 1-3).

On July 31, 2022, Plaintiff went to sick call and gave his broken hearing aid to a nurse (Molli Flanagan, who is not a Defendant) and requested a replacement. Nurse Flanagan agreed to give the broken hearing aid to Defendant Brown (Head ADA Coordinator/Health Care Unit Administrator). (Doc. 1, p. 6). More than a month later, on September 6, 2022, Plaintiff received a memo from Defendant Lankford (ADA Coordinator) stating his hearing aids could not be repaired, and he would be scheduled to see an audiologist in September.

Plaintiff saw the audiologist on September 23, 2022; the doctor gave him a hearing test and made moldings of both ears for the hearing aids. The doctor told Plaintiff he

---

[2]      The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and the two entities.

would not get the new hearing aids until he saw the ENT doctor. The appointment would be made by the Pinckneyville Health Care Unit Administrator (Defendant Brown) and Wexford Health Sources, Inc. ("Wexford").

Plaintiff wrote to Defendants Brown and Lankford to find out when he would see the ENT doctor, but he received no response. He later found out that he was scheduled to see the ENT doctor in January 2023. (Doc. 1, p. 6-7).

On January 11, 2023, Plaintiff saw the audiologist (Flynn, who is not a Defendant) for the second time. She showed Plaintiff the instruction manual and his new hearing aids and allowed Plaintiff to examine them. However, she repeated that Plaintiff could not have them until after he saw the ENT doctor.

Plaintiff was examined by the ENT doctor on January 18, 2023. He performed minor surgery on Plaintiff's left eardrum and told Plaintiff he would approve him for the hearing aids. (Doc. 1, p. 7).

By the end of January 2023, Plaintiff had been without hearing aids for six months. As a result, he could not hear, and he missed going to meals, commissary, yard, gym, dayrooms, and mental health group meetings. (Doc. 1, p. 7). He suffered stress and depression as well. (Doc. 1, p. 10).

On February 28, 2023, Plaintiff spoke to Defendant Crow (Assistant Warden of Programs) and Defendant Brown. Both Defendants were "shocked" to learn Plaintiff still had not received his hearing aids, but they walked away without further comment. (Doc. 1, p. 8). Plaintiff asserts that Defendants Crow and Brown, as well as Defendant Warden Mitchell, would have seen his previous "emergency ADA grievances", and thus, they

were informed that he did not have his hearing aids. (Doc. 1, p. 8-9).

Plaintiff had been given a Vibra Lite 8 watch[3] as another accommodation for his hearing impairment. (Doc. 1, p. 8). It stopped working after several weeks, so Plaintiff turned it in to a nurse for a new battery. Weeks later he got it back in worse condition, so he turned it back in and told Defendant Lankford he needed a replacement watch. However, as of the date of his Complaint (July 12, 2023), Plaintiff never received a new watch (Doc. 1, p. 8). He wrote several letters and emergency grievances "begging" for hearing aids but to no avail. Plaintiff had no accommodation items or an inmate aide to assist during the time he was awaiting replacement of the hearing aids. (Doc. 1, p. 8-9).

Plaintiff does not disclose the date when he finally received his hearing aids. However, Plaintiff asserts he went without them for almost eight months. (Doc. 1, p. 9-10). During much or possibly all this time, Plaintiff went without any other accommodations for his hearing loss.

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1:    Eighth Amendment deliberate indifference claim against Defendants for failing to provide Plaintiff functional hearing aids or other accommodations for his hearing impairment, for approximately eight months beginning July 31, 2022.

Count 2:    ADA/RA claim against Defendants for failing to provide Plaintiff functional hearing aids or other accommodations for his hearing impairment, for approximately eight months

---

[3]    Plaintiff does not provide the date when he was given the Vibra Lite 8 watch or when it broke. This is a vibrating alarm watch. *See* https://circatempus.com/.

beginning July 31, 2022.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[4]

## Official Capacity Claims

Plaintiff raises claims against each defendant (except for Wexford) in his or her individual and official capacities. He does not request injunctive relief. Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *See Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the individual defendants are dismissed without prejudice.

## Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Deliberate indifference is demonstrated where a

---

[4]     *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

prison official acted or failed to act despite his/her knowledge of a serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Additionally, "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Plaintiff's hearing impairment is an objectively serious medical condition. His allegations, at this early stage, indicate that each individual Defendant was made aware of the lengthy failure to provide Plaintiff with devices to treat/accommodate his hearing loss, yet they all failed to act to mitigate the harms he suffered. Count 1 will therefore proceed against Defendants Mitchell, Crow, Brown, and Lankford.

However, Count 1 cannot proceed against Defendant Wexford. While Wexford may have been the employer of medical provider Defendants Brown and/or Lankford, that is not sufficient to hold Wexford liable. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *See Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (noting that a private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff's Complaint does not allege that any individual Defendant either acted or failed to act because of an official policy or practice espoused by Wexford. Accordingly, Defendant Wexford will be dismissed from the action without prejudice.

## Count 2

Plaintiff's allegations are sufficient to state a viable ADA and/or RA claim.

However, this claim cannot proceed against individual defendants – individual employees of IDOC cannot be sued under the ADA or the RA. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). Instead, the proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros*, 684 F.3d at 670, n.2 (noting that individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Accordingly, the Clerk of Court will be directed to add the Illinois Department of Corrections ("IDOC") as a defendant and Count 2 will proceed only against the agency. The remaining defendants are dismissed from this claim.

**DISPOSITION**

The Complaint states colorable claims in Count 1 against Mitchell, Crow, Brown, and Lankford, and in Count 2 against the Illinois Department of Corrections. The Clerk of Court is **DIRECTED** to **ADD** the Illinois Department of Corrections as a Defendant. Defendant Wexford Health Sources, Inc., is **DISMISSED** from the action without prejudice.

The Clerk shall prepare for David Mitchell, Cheryl Crow, Christine Brown, Angela Lankford, and the Illinois Department of Corrections: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate

steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in

dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:   September 27, 2023.**

Digitally signed by
Judge Sison
Date: 2023.09.27
13:09:24 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**


## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.